We'll move to our fifth case this morning. Thank you. Thank you. United States against Wyatt. All right. I see both counsel. Mr. Hillis, you may proceed. Thank you. May it please the court. Mr. Fennell, my name is Daniel Hillis. I'm with the Federal Public Defender's Office and I represent Mr. Wyatt. This appeal deals exclusively with restitution and the $95,000 restitution amount that the district court awarded to the victims in this case is invalid for several reasons. The first, in our view, the cleanest way to deal with this is on jurisdictional grounds. And the problem is under 18 U.S.C. 3664 D-5, the district court didn't have the authority to postpone the restitution determination like it did and then order it months later in July as occurred. So 3664 D-5 allows a district court to postpone a restitution decision if a victim's losses are not ascertainable 10 days before sentencing. And it further requires that the probation officer or the government notify the district court of this so that the None of that happened here. There was no claim that the amount was unable to be ascertained. The PSR said that the victim's amount of restitution was none. And so when the district court held the sentencing hearing on November 15, 2019, restitution had to be determined then based on the evidence that was before the district court. But the district court didn't do that. It didn't impose restitution until July 22, 2020. And that order is without justification under the statute. And therefore, the district court lacked jurisdiction and the amount is void. And if it was necessary for us to establish plain error, we can do so here because the district court errantly postponed under the statute. The error was plain given the statutory text. There's a substantial effect to my client's property rights because he's now being ordered to pay over $95,000 in restitution when the victim's requested none. And the integrity of the district court, the public perception of the court proceedings is seriously impacted because the district court is now doing things without authority. And neither Dolan nor 3664 D5 gives the district court authority to do the thing that happened. So if the court has questions for me on that, I'll happily entertain them. Otherwise, I'll move on to the second issue in the case. Well, while you do on this first argument, you do have to contend with Dolan's conclusion that this does not deprive the court of power to order restitution, a statutory time limit violation. Your Honor, I think that Dolan was careful to address that with respect to the 90-day provision. As a prerequisite to getting to that, though, the government or the probation officer has to make an assertion in the district court that the amount is unable to be ascertained. And that didn't happen here. So this is different than Dolan in that regard, and that's a crucial thing. So on what rationale would the ascertainment, the governmental ascertainment requirement be jurisdictional if the 90-day deadline is not? Well, because statutes generally are construed to grant the authority to do something within the confines of what the statute allows. And when you're exceeding that, you have a problem. And so Dolan addressed the provision about the 90 days in the word shall. But Dolan didn't address this. And I think that Dolan would come out differently if it was the case the government was simply delaying, didn't come up with the necessary evidence, the district court had all the information in front of it. These are due process considerations. There's also the requirement that people be sentenced without unnecessary delay. So these are components of this case that differ from Dolan. And I think Dolan would have come out differently had Dolan confronted a situation where everybody knew what the losses were, and they just kind of sat on their hands or didn't take the necessary action. I think Dolan comes out differently. Dolan doesn't address this. Okay. I'm still not hearing an argument as to why. It's just a different species of delay, but it's all the same statutory scheme. And the court is laying down a ruling, as it did in Dolan, that it's just an ordinary error, not a jurisdictional error to miss the 90-day deadline. It strikes me as not coherent to argue that the case would have come out differently if the government's 60-day deadline was before the court. It's a similar kind of deadline, and if one I think they're very different things, Judge. So when the one situation is at the victim's detriment that somebody who is supposed to be serving the victim's interests doesn't do something, and the victim was powerless in this regard, that's a different scenario than a situation where everybody comes to court, should be prepared, and there is an interest and finality that would require the imposition of sentence based on the known information. And here, the PSR says that there were no losses, no victim requested any. That's effectively a disavowal of any right to restitution when they've been alerted and have not asked for any restitution. So we have a situation where now the district court is postponing a readily made determination for the benefit of one party and not the other, and it comes at the expense of my client's right to be sentenced without unnecessary delay. So I don't think that Dolan does address this, Judge, but I would like to move on to the second point. And the second point that we raised in the brief is that the district court committed still other errors in this case by not having the complete accounting that was required here under the federal rules, also by allowing the belated presentation by the government of victim loss amounts when they had asked for no restitution, any of the victims. Of course, we are concerned also about the failure to conduct the amounts the victims kept. Their earnings had to be deducted from the restitution award, otherwise there's a double recovery prospect that's contrary to due process in Seventh Circuit case law. And in relation to that, we have still another problem, and that is a person who is in participant in criminal conduct is not a victim. And so under the Archer case and authority of that type, this is an amount that they should not have been awarded for any time that they were voluntarily participating in the illegal activity. They're not a victim under the statute. So the district court didn't take that into consideration. And then furthermore, my client didn't have the opportunity. Was that a position, Mr. Hillis? It may be, I don't recall from the briefing this precise point. Was that a position your client was taking, that his client didn't have victims? No, they're victims, Judge, but some of the conduct was in the period where they were voluntarily participating in the criminal efforts. Oh, yeah, yeah, yeah. I remember that. Okay. I got that part. Okay. So it's that portion, Judge. So when they are involuntarily participating, they're a victim. But in the period that leads up to that, they are not. And to stand there, it seems to me a matter of some bad policy to allow a person who's actively participating on a voluntary basis in criminal conduct to gain restitution for the criminal conduct that they voluntarily engaged in. They have the money that was paid to them through the dates for the money that they were able to keep. And now they're double dipping by having an award that gives them an amount that they already received. That seems to me to be contrary to Swanson and notions of due process that Swanson discussed. And I believe the Rhodes case addresses a similar concept. So that is a problem. And then there's more due process and trouble of this type where we look at what it is that the evidence that the government put forward to the case agent. Case agent is calling information from grand jury transcripts that are nowhere in the record. We don't know if they're accurate. We have them making an assertion. The assertion is wildly different. It seems one part of the proceeding to the next. It's 202,000. It's 129,000. District Court ultimately says it's 95,000. But we've got the case agent saying that the amount for one of dates, for instance, for AB1 is $125. The prosecutor said it was $50. And so we have all this discordant information. My client doesn't have representation now at this phase where the district court, and this is the next problem. The district court is now relying on the case agent's information, the materials presented by the government that are akin to the Wake Nine case, Bergman from the Ninth Circuit, and also the Hoskin case. With the unreliable nature of the evidence, the inability of the defendant to respond to the information, to cross-examine the witness here, the case agent, to do any of these things, my client has no ability to do this. His lawyer is out of the case. Out of the case post-hearing, right after that hearing is out of the case. One thing that you are absolutely right about, at least in my judgment, Mr. Hillis, this is a mess. This is a complete mess. And the district judge saw that and laid a meaningful portion of the mess on the government. At the end of the day, though, your client had a fair bit of success in chipping away at these restitution amounts, did he not? I mean, everyone can agree. Oh, yeah, he did. It started at, what, a couple hundred thousand bucks or something. Judge, if the amount was wrong and should never have been awarded to say that the amount that was ultimately awarded is less, it doesn't tell me there's great success. No, no, no. It just says they started from a It ain't going to exist. It's prostitution. People have no idea. It's tragic crime. It's an approximation. They do the best they can. Sure. And we could have had that information if the victims had submitted any loss requests, but they didn't, Judge. And so there is supposed to be a complete accounting. The victims could have provided statements. They chose not to. That was their decision. And these are tragic cases, Judge. There's no doubt about that. But there's never less rule of law that has to be respected here, and it wasn't. And so it's a mess. But did the district court effectively hold the government's feet to the fire? It didn't. It gave it a pass and said, in the next case, I'm not going to allow it to go on this way. But the present case requires action. And so when we have unreliable amounts, no ability to cross-examine the case agent, we've got real problems. And then ultimately, the award that is given isn't pronounced in open court. My client isn't at a hearing who cannot say anything about the judge's rationale, the stated reasons, because there aren't any, given in the open court proceeding that 3553C requires. I'm not talking any longer about Rule 43A3. That claim has effectively been stifled. We are talking about due process, and we're talking about what it is that my client should have been able to view or have reported to him under the statute that absolutely applies, 3553C, and that was another violation. Mr. Hillis, can I get the benefit of your view on this? I really want to hear. What's the remedy for that violation? So let's just, these facts or any other facts, it's not announced in open court. You got a pretty good argument under the statute. What's the remedy? Yeah. The court may not love this remedy, but here's the remedy, Judge. A party under the limited to the evidence presented at the time of the sentencing, which should have been the February 7th hearing, to say this is where we're locked in time, and you're not allowed to offer now new, better, different evidence. The government would then have a PSR that said the victim's request for restitution, the immobilizer entitled to, was none, and that would be the end of it. And the district court was poised to do that, but didn't. And if nothing else, Judge, the court's uncomfortable with that, and I don't think that it should be, because if the shoe were on the other foot, we'd be in the cold on it. I'm quite certain that we're not racing to protect the rights of pimps in cases, right? But if we have a situation where it goes back, at the very least, my client should be able to argue and point out why the case agent's between the case agent's assertions and the prosecutor's assertions from the amounts of dates were charged, the failure to deduct the willing participation of individuals who were not then victims. There are a lot of things that come on that side of the ledger if we don't cut the government off altogether from presenting. And then I would say, finally, that if this is civil and not criminal in nature, we have minimal due process that still wasn't afforded to my clients. With that, I will reserve the balance of my time. That's fine. Thank you. Mr. Funnell. May it please the court. My name is Tim Funnell. I'm representing the government in this case. Before addressing the authority issue and Dolan, I'd like to address the issue of trial counsel's representation under the Zilgis and the chronic standards that have been raised by Mr. Wyatt. Mr. Funnell, before you get to that, can I ask you one question just following up on sort of where Mr. Hillis ended here, which is the 3553C analysis. Under 18 U.S.C. section 1593, I believe in this case, the district court was required, the statute says shall, I think the district court was required to order the defendant to pay the victim the full amount of the victim's losses. Is there, is it the government's position that that is in fact what the district judge did? Is it he ordered the defendant to pay the full amount of the victim's losses? Because if he did order full restitution, then I'm not sure that 3553C applies. But I want to know what the government's position is on whether the restitution amount, you know, if the district court followed the law and directed the defendant to pay the full amount of the victim's losses here. Your Honor, that is our position. Of course, we had asked for a higher amount, but that doesn't necessarily mean that the judge in his discretion did not do exactly what Your Honor just described, and that is to order the full amount of the losses as he set forth in his 14-page order. He went through the order, or excuse me, he went through the underlying facts and really honed in on the issue, which was the number of dates that were involved. The average amount per date was not a disputed issue at the time, as defense counsel and the government both argued during the restitution hearing itself and then in the PSR addendum that was submitted prior to the restitution hearing. So, the number of dates that there were and the number of times that the defendant was in a position to do what he had pled guilty to, which was to coercively sex traffic these three particular victims that did have sufficient information before the court in order to determine restitution. So, I think Your Honor's point is well taken and how that impacts the 3553C question, because what 3553C discusses and left unanswered in Stivers was pronouncing sentence in open court. First of all, the question is whether restitution is a part of the criminal sentence that's contemplated by 3553C, and we do have the Newman decision that we've cited relevant to that. But then also, the text of 3553C regarding restitution is really in the conditional where it says if the district court does not order restitution, or if partial restitution is ordered, then the district court shall set forth reasons. Well, in this particular case, at sentencing, the judge did indicate that he was ordering restitution as he's required to do under Dolan. The precise amount were the open question that remained. So, it's the government's position that he did comply with pronouncing restitution as an order as part of the sentencing hearing. The returning to the Zilgis and the chronic issues, I'd just like to indicate that first of all, Zilgis involved a request to substitute counsel, which did not occur here. If it's construed, if Mr. Wyatt's prosaic pleadings are... Mr. Funnell, let me ask you a question on that. Mr. Wyatt's counsel filed a motion to withdraw, but the district court did not grant that motion until the district judge entered his sentence, or entered the restitution order, right? Correct. So, you would agree that under the rules that apply to lawyers, Mr. Wyatt was represented by his counsel until the time that the district judge granted the motion to withdraw. Is that right? He was technically represented. Yes, he was, Your Honor. Effectively, Mr. Sanders at that point on February 13th, I believe it was, some six days after the restitution hearing, 13th or 14th, Mr. Sanders made it clear in his motion that even though he had been representing Mr. Wyatt throughout the guilty plea, the sentencing, the restitution, and up until that point in his discussions with the government, he was no longer essentially being asked to do anything by Mr. Wyatt. So effectively, the government would agree that his representation essentially did not continue once he filed that motion. There's nothing in the record to indicate that it did. However, Mr. Wyatt did file several pro se pleadings of his own both before and after that motion to withdraw after the restitution hearing. The district court's written order made clear that it was considering Mr. Wyatt's pro se filings that he submitted before the motion to withdraw. And notably, Mr. Wyatt went through in some detail what his factual disputes were with the restitution amounts. And the district court's order said that it was considering those matters and that it did not find them supported by the record. Regarding the comment earlier about sort of the mess that's involved here, I would indicate that both the government and defense counsel, Mr. Sanders, who had been representing Mr. Wyatt for well over a year by the time of the restitution hearing, defense counsel made clear that he did not agree with the district court's defense counsel was not prepared to address the sentencing hearing during the restitution hearing. Defense counsel made clear that he was prepared. The only two documents that he had not seen were the case agent's affidavit and the government's memorandum. And the reasons that he did not see those was not any fault of his or of the government. It was an ECF filing issue. He was given an adjournment until later that day. He then reviewed those documents. And as you can see from the record, when he came back into the hearing, defense counsel was able to demonstrate his command of the historical facts of the case and went through as to AV1, AV3, and AV5 in some issue under Zilgis and Cronick about just how defense counsel demonstrated that this is not at all a situation where Mr. Wyatt was left without counsel completely or that the district court had reason to inquire further into the nature of any breakdown between the two because the evidence in the record and then Mr. Wyatt's own personal submission where Mr. Wyatt did not request new counsel and he was detailing the factual disputes, that the district court was already amply informed about what the disputes were on the lingering restitution issue. So there was no further need to go into it. Defense counsel started out in the case with government at $202,000. By the time that they got to the post-restitution hearing amount, the government through defense counsel's efforts before the district court ever ruled on anything was down to $129,000. That's a $70,000 reduction that defense counsel was able to convince the district court that this was not an issue that was in order. Those distinctions that defense counsel drew out for the government resulted from, again, his command of the facts, his knowledge of the case, and the homing in on the exact issues regarding AV1, AV3, and AV5. He made clear, again, nobody was sitting on their hands here. He said, we have been negotiating, we've been talking, we've been arguing, we've been litigating, we have emails going back and forth. So I guess your point is that the lawyers may have been doing that, but the district court, I mean, you read that transcript, Mr. Fahl, you don't see that kind of tonelashing every day. He felt like he was left in the dark. I understand that, Your Honor, and as we indicated at the time in our post-restitution hearing letter, we respectfully disagree with that. And the reason that we do is not only because of all the efforts that the parties put forth, but also the probation officer made clear prior to the sentencing in a PSR addendum that was filed on the same day, well in advance of the sentencing in November, that the disputed restitution figures were set forth in the PSR addendum with the original sentencing hearing in November. The district court looked at the probation officer's recommendation that the amounts were not ascertainable. The district court at least five times on the record at the sentencing hearing made clear that it had seen that portion of the PSR addendum, that it agreed with the probation officer's assessment that the amounts were not ascertainable. And certainly the district court encouraged the parties to continue negotiating and see if they could come up with an agreed figure. The district court also indicated at that time at sentencing that it may refer the matter to a magistrate judge because the issues remained in dispute and were not ascertainable. The district court further said that it did not want to engage in guesswork, that it considered these matters to be serious because the amounts were important obviously, and that restitution to the victims was obviously important. So we would respectfully disagree because we believe that the record bears out the district court was on notice at the sentencing hearing by its own comments that these amounts were still to be determined and had not been ascertained. And appellate counsel here ascribes great significance to the opening phrase, if the amounts cannot be ascertained. As Judge Sykes had indicated, it's the government's position that that does not deprive the district court of jurisdiction consistent with Dolan. Dolan certainly had every cause and opportunity to address that aspect of the statute if it was a jurisdictional prerequisite. The Supreme Court did not do that. They laid out several considerations in favor of jurisdiction and why these were time directive or non-jurisdictional time-related directives. And even if there was full compliance in this case or any case with all of those time-related directives, the statute still provides that restitution may not be ascertainable by the time of sentencing. And ascertainable, I think, is capable of different meanings, common sense interpretations, including that it simply remains in dispute whether all of the information has been amassed at that time or not. That could be the situation in a given case. It could also be that further investigation is necessary. It could be, as the court in Dolan indicated, there is no time limit placed on the victim's ability to seek restitution after the judgment is imposed. Dolan also made clear that under the not wanting to delay sentencing and not wanting to delay the defendant's ability to pursue a direct appeal, that a judgment can be issued where restitution is ordered but deferred. That is exactly what happened here. Mr. Wyatt was able to take advantage of all of his appellate rights and pursue a sentencing appeal without having to wait for the district court's determination on restitution, which came months later. So this is the second time that this case is before the court, and that is evidence that he has not been deprived of due process. The permissive standards that apply at sentencing also apply during a restitution hearing. I see that my time is almost up. If the court has any last second questions, I'm happy to answer them. Otherwise, we would simply ask the court to affirm the restitution order. Thank you. Thank you very much. Mr. Hillis. Yes, Your Honor. Judge Kirsch, you made an excellent point. The government, though, didn't argue that in its brief. So there's a waiver problem here, and we should not afford the government the benefit of that waiver. There's another problem. The district court awarded a lesser amount than the judge imposed, so there is only partial restitution by way of what the victim request was made on their behalf by the case agent. So we are squarely in 3553C category anyway. Finally, there's an abandonment problem that my client was not represented past February 7th. There was a statement by counsel that he would respond to the government. That never happened. My client was not represented. That's a chronic problem. And then finally, the grand jury transcripts are something the government seemed to intimate my client had. He didn't. They're not in the record. The district court never had them, and yet that is apparently the north star here for showing that everything is reliable. The case agent only provided a synopsis. This court can't even look at the transcripts to see if they're accurately recounted by that witness. The district court didn't have that ability either. We cannot put stock in the determinations of the case agent. With that, I have nothing else. All right, thank you very much. Our thanks to both counsel. The case is taken under advisement.